```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
BRIAN HENDERSON                         :
                         Petitioner,    :   10 Civ. 5135 (DLC)
                                        :
           -v-                          :   OPINION AND ORDER
                                        :   ADOPTING REPORT AND
DANIEL MARTUSCELLO, JR.,                :   RECOMMENDATION
                                        :
                         Respondent.    :
                                        :
----------------------------------------X
```

APPEARANCES:

For the Petitioner:

Alan M. Nelson
3000 Marcus Avenue, Suite 1E5
Lake Success, NY 11042

For the Respondent:

Rither Alabre
The Bronx District Attorney's Office
198 East 161st Street
Bronx, NY 10451


DENISE COTE, District Judge:

On July 6, 2010, petitioner Brian Henderson ("Henderson") brought this timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On August 11, counsel was appointed to represent Henderson.[1]  On December 2, the respondent was ordered to answer the petition.  On December 3, the action

---

[1] At that time, the action was assigned to the Honorable Judge Stephen C. Robinson.  On November 15, the action was reassigned to this Court.

was referred to Magistrate Judge George A. Yanthis for the preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b) ("Report").  On September 5, 2013, Judge Yanthis issued a Report recommending that the petition be dismissed.  On September 20, the Court received Henderson's objections to the Report.  Having considered those objections, the petition is denied.

BACKGROUND

The facts underlying the petition are described in detail in the Report.  Only those facts necessary to respond to objections to the Report are recited here.

Henderson was tried on, inter alia, a charge of attempted assault in the first degree.  The charge arose out of a fight among inmates at Riker's Island, during which Pablo Pastrana ("Pastrana") sustained multiple lacerations and stab wounds.  The state's position at trial was that Henderson attacked Pastrana.  It relied on the eye witness testimony of two corrections officers who testified that they witnessed Henderson jab Pastrana with a metallic object and shortly thereafter saw Henderson place an object in a shower drain.  A nine-inch shank with a sharpened edge was later retrieved from the drain.  The defense's position at trial was that Henderson was not involved in the assault at all.  Its principal witness was Pastrana, who

testified to the jury that he got into a fight with "a Spanish brother." Henderson is not Hispanic.

During cross-examination, the state brought out inconsistencies between Pastrana's testimony and his statement in a report prepared by Officer Sheridan ("Sheridan Report") after the attack. Although the Sheridan Report is not part of the record, the trial judge characterized it as including a statement by Pastrana that "he cannot positively identify his attackers."

Also on cross-examination, the state asked questions that intimated that Pastrana was intimidated into testifying for Henderson. Pastrana insisted that he had not been intimidated by Henderson.

During summation, defense counsel asked rhetorically, "Why in a room full of inmates, did not one inmate come forward to say that Brian Henderson had anything to do with this?" During its summation, the prosecution again suggested that Pastrana was intimidated into giving his testimony.

On March 17, 2005, the jury found Henderson guilty of attempted assault in the first degree. On May 19, Henderson was sentenced principally to a prison term of sixteen years to life.

On appeal, Henderson raised multiple claims including, as relevant here, prosecutorial misconduct, a Brady violation, insufficient evidence to convict, and ineffective assistance of

3

counsel.  On April 15, 2008, the Appellate Division rejected these claims and affirmed Henderson's conviction.  People v. Henderson, 50 A.D.3d 439 (1st Dep't 2008).  One Justice dissented from the decision, but with respect to the prosecutorial misconduct claim only.  This claim was authorized for appeal to the New York Court of Appeals.  On November 23, 2009, that court unanimously rejected the prosecutorial misconduct claim.  People v. Henderson, 13 N.Y.3d 844 (2009).

On July 6, 2010, Henderson filed a petition for a writ of habeas corpus in this Court.  Henderson's petition raises the four constitutional claims that were adjudicated on the merits in his direct appeal.

DISCUSSION

Where, as here, a state court has reached the merits of a federal claim, habeas relief may not be granted unless the state court's decision was "contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1), (d)(2).  "A state court's determination that a claim lacks merit" is not unreasonable "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

A reviewing court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The court shall make a de novo determination of those portions of the report to which objection is made. United States v. Male Juvenile, 121 F.3d 24, 28 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." King v. Greiner, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (citation omitted).

Henderson's habeas petition consists of four claims: (1) that Henderson was deprived of a fair trial when the prosecution committed misconduct by making unfounded comments during trial and summation that Henderson intimidated Pastrana into giving his testimony; (2) that the prosecution's failure to disclose the Sheridan Report, which contained two key witness statements, constituted a violation of Brady v. Maryland, 373 U.S. 83 (1963) and People v. Rosario, 213 N.Y.2d 448 (1961); (3) that the evidence was legally insufficient to establish the mens rea element of attempted assault in the first degree, and (4) that Henderson's trial counsel was constitutionally ineffective by

5

failing to inform him of his status as a persistent felony offender and by failing to call certain experts.

A. Prosecutorial Misconduct

The gravamen of Henderson's prosecutorial misconduct claim is that the state court erred by failing to recognize the lack of evidence to support a witness intimidation theory, thus making the prosecutor's comments unfounded and constitutionally improper.  The Report recommends denying this claim because the petitioner's complaint is confined to a few questions and remarks by the prosecution, most of the objections to the prosecution's allegedly improper comments were sustained and stricken from the record, and the remaining comments were sufficiently grounded in the record and appropriately addressed to Pastrana's credibility.  Moreover, given the eye witness testimony in support of the verdict, these comments had no substantial effect on the verdict.  Henderson objects that the Report erred by ignoring facts demonstrating that the prosecutor's comments regarding intimidation were unfounded and by failing to appreciate the closeness of the case.

Prosecutorial misconduct does not rise to the level of a constitutional violation unless "the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v. Wainwright, 477

U.S. 168, 181 (1986).  Here, the Appellate Division reviewed the record and concluded that there was no denial of due process because (1) intimidation was an "appropriate subject of cross-examination" and a "limited inquiry;" (2) the prosecutor's comments at summation were "properly responsive" to the defense's closing; and (3) "[a]ny instances of improper remarks by the prosecutor were minor, isolated, and harmless."  People v. Henderson, 50 A.D.3d 439, 439-40 (1st Dep't 2008).  The Court of Appeals agreed, finding that the prosecutor's comments at cross-examination were a "reasonabl[e]" attack on Pastrana's credibility given its centrality to Henderson's defense, and that his comments at summation were "a fair response to defense counsel's closing argument."  People v. Henderson, 13 N.Y.3d 844, 847 (2009).  Thus, four justices of the Appellate Division and the entire Court of Appeals reviewed the facts and found no denial of due process.

The state courts' conclusion was not unreasonable.  Most of the alleged improper comments that Henderson cites in his petition were stricken from the record, and a curative instruction was given.  While it is true that one justice of the Appellate Division disagreed with the assessment of his colleagues, the existence of such disagreement between "fairminded jurists," Richter, 131 S. Ct. at 786, does not entitle Henderson to habeas relief.

7

B. <u>Brady</u> violation

    Henderson's second claim is based on the prosecution's inability to show that it had in fact disclosed the Sheridan Report to defense counsel prior to trial.  The Sheridan Report included two statements made to Officer Sheridan: one by Pastrana, explained above; and one by an eye witness corrections officer, Officer Lloyd, in which she stated that she removed the shank from the drain.  This was inconsistent with Officer Lloyd's testimony at trial that, although she saw Henderson drop an object down the drain, it was another officer who retrieved the shank.  Henderson alleges that the non-disclosure of the Sheridan Report constituted a <u>Rosario</u> and <u>Brady</u> violation for each witness.

    The Report recommends denying the <u>Rosario</u> claims because state law violations are not grounds for habeas relief.  Henderson made no objection to this recommendation, and because there is no clear error, the recommendation is adopted.

    The Report further recommends denying the <u>Brady</u> claim based on the non-disclosure of Lloyd's statement because Henderson was in possession of Lloyd's grand jury testimony, in which she testified that she removed the shank from the drain herself.  Henderson made no objection to this recommendation, and because there is no clear error, it too is adopted.

8

The Report also recommends denying the Brady claim based on Pastrana's statement to Sheridan.  Although the prosecution failed to disclose this statement, it did disclose prior to trial a statement Pastrana made to another officer in which Pastrana stated that he did not "know who hit" him.  The Report accepts Henderson's characterization of Pastrana's statement in the Sheridan Report as Pastrana "did not "see his attackers," but nevertheless recommends denying the Brady claim because, notwithstanding the distinction between "knowing" and "seeing," both statements are materially identical in that they both convey that Pastrana was "not aware of his attacker's identity." Henderson objected, repeating his arguments that "knowing" differs from "seeing" and that disclosure of the Sheridan Report would have altered the defense strategy.

In Brady v. Maryland, the Supreme Court held that the prosecution's failure to disclose material evidence to the defense was a due process violation.  373 U.S. 83, 87 (1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Strickler v. Greene, 527 U.S. 263, 280 (1999).  The Appellate Division unanimously found that the Sheridan Report was not "material" because it "perceive[d] no reasonable possibility that [its] timely

9

disclosure would have altered the verdict." Henderson, 50 A.D.3d at 439.

This conclusion was not unreasonable. Contrary to Henderson's characterization, Pastrana's statement in the Sheridan Report is not about "seeing" his attacker but, according to the trial judge, is about being unable to "identify" his attacker. This is identical to the disclosed statement that Pastrana did not "know" who attacked him. On direct appeal, the state courts were presented with these identical statements, and thus it was not unreasonable for them to conclude that no Brady claim lies. In any event, the apparent distinction between "seeing" and "knowing" would not have been sufficiently compelling to conclude that the state's court decision rejecting the Brady claim was an outcome that no "fairminded jurist[]" could have reached.

C. Sufficiency of Evidence

Henderson's third claim is that the evidence was legally insufficient to establish that he intended to cause "serious physical injury" because Pastrana's injuries were superficial. The Report recommends denying this claim because the evidence at trial included the eye witness testimony of the attack, use of a sharpened weapon, and repeated slashings of Pastrana's torso. This was sufficient for a jury to infer that Henderson possessed

10

the necessary intent. Henderson objects, asserting there had to be some evidence of threats, of which there was none, to conclude that Henderson acted with the intent to cause "serious physical injury."

A petitioner is "entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). Under New York law, to be guilty of attempted assault in the first degree, Henderson must have possessed the intent to cause "serious physical injury," which is defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(10). The state court found that Henderson's verdict was "based on more than legally sufficient evidence" given "the eyewitness testimony of two correction officers who both observed him stabbing a fellow inmate." Henderson, 50 A.D.3d at 439. New York law says nothing about threats, and thus a rational fact-finder could conclude, based on the eye witness testimony and the inherent dangerousness of the weapon, that Henderson acted with the intent to commit "serious physical injury." The state court decision was not unreasonable.

11

D. Ineffective Assistance of Counsel

Henderson's fourth claim in his habeas petition alleges that his trial counsel was constitutionally ineffective in two ways.  First, he failed to advise Henderson as to his status as a persistent felony offender and the heightened sentencing exposure that would result from this status if he were to be convicted.  Second, trial counsel failed to call an expert serology and pathology witness.

As to the second allegation, the Report recommends denying the claim because trial counsel was diligent in pursuing an expert witness, but the potential witness advised counsel that he could not provide helpful testimony.  Henderson made no objection to this recommendation, and because there is no clear error, it is adopted.

As to the first allegation, the Report recommends denying the claim because Henderson was explicitly advised by the state trial judge of his heightened sentencing exposure.  He was therefore not unaware of this information.  Henderson objects by citing recent Supreme Court precedent, Lafler v. Cooper, 132 S. Ct. 1376 (2012), and Missouri v. Frye, 132 S. Ct. 1389 (2012), extending the Sixth Amendment right to effective assistance of counsel to the plea bargaining context.

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that: (1) counsel's performance "fell below an objective standard of reasonableness" in light of prevailing professional norms, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Both prongs must be met for a valid Strickland claim. Id. at 687. The state court found that Henderson suffered no prejudice because he had been informed of his persistent felony offender status and because, given Henderson's vehement belief that he would be found innocent at trial, he would "never" have accepted a plea.

The state court decision denying Henderson's Strickland claim was not unreasonable. Henderson's objection misses the point. The Report recommended that Henderson suffered no prejudice, not because Strickland did not apply in the plea bargaining context but because Henderson failed to demonstrate that he suffered prejudice in that context. Henderson was committed to going to trial, despite the trial court's warning of his sentencing exposure. Accordingly, there is no reasonable probability that Henderson's outcome with regard to the plea offer would have been any different had his trial counsel advised him properly.

13

CONCLUSION

The recommendation of the Report is accepted, and the July 6, 2010 petition for a writ of habeas corpus is denied. In addition, a certificate of appealability shall be not granted. The petitioner has not made a substantial showing of a denial of a federal right and appellate review is, therefore, not warranted. Tankleff v. Senkowski, 135 F.3d 235, 241 (2d Cir. 1998); Rodriquez v. Scully, 905 F.2d 24, 24 (2d Cir. 1990). Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Opinion and Order would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 445 (1962). The Clerk of Court shall dismiss this petition and close the case.

SO ORDERED:

Dated:   New York, New York
         December 10, 2010

_____
DENISE COTE
United States District Judge